AUSAs: Catherine Ghosh, Jerry Fang, Meredith Foster, Sebastian Swett, Jacob Fiddelman

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 413** |
| UNITED STATES OF AMERICA | <u>SEALED COMPLAINT</u> |
| v. | Violations of 18 U.S.C. §§ 666 and 1951 |
| SELWYN BARLEY,<br><br>                    Defendant. | COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

    DELCINE DOSCHER, being duly sworn, deposes and says that she is a Special Investigator with the New York City Department of Investigation ("NYC DOI") – Office of the Inspector General for the New York City Housing Authority ("NYCHA-OIG"), and charges as follows:

### COUNT ONE
### (Solicitation and Receipt of a Bribe by Agent of Organization Receiving Federal Funds)

    1.    From at least in or about August 2018 through at least in or about May 2021, in the Southern District of New York and elsewhere, SELWYN BARLEY, the defendant, being an agent of an organization, and of a state, local, and Indian tribal government, and an agency thereof, to wit, the New York City Housing Authority ("NYCHA"), which received, in the calendar years 2018 through 2021, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of NYCHA involving a thing of value of $5,000 and more, to wit, BARLEY solicited and accepted a total of at least approximately $9,000 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $90,000.

(Title 18, United States Code, Section 666(a)(1)(B).)

### COUNT TWO
### (Extortion Under Color of Official Right)

    2.    From at least in or about August 2018 through at least in or about May 2021, in the Southern District of New York and elsewhere, SELWYN BARLEY, the defendant, knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United

States Code, Section 1951(b)(3), to wit, BARLEY, under color of official right, obtained money from NYCHA contractors, with their consent, that was not due BARLEY or his office.

(Title 18, United States Code, Section 1951.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

## OVERVIEW

3. I am a Special Investigator with the NYC DOI NYCHA-OIG, and I have been personally involved in the investigation of this matter. I have been employed by NYC DOI since 2020. I and other members of the investigative team, which includes agents from NYC DOI, the United States Department of Housing and Urban Development – Office of Inspector General ("HUD-OIG"), United States Department of Homeland Security – Homeland Security Investigations ("HSI"), the United States Department of Labor – Office of Inspector General ("DOL-OIG"), and the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") (collectively, the "Investigating Agencies"), have experience with bribery and extortion investigations and techniques associated with such investigations.

4. This affidavit is based in part upon my own observations, my conversations with other law enforcement agents and others, my examination of documents and reports prepared by others, my interviews of witnesses, and my training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation. Where the contents of documents, including emails, and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where specifically indicated otherwise.

5. As set forth in more detail below, there is probable cause to believe that SELWYN BARLEY, the defendant, an employee of NYCHA at all relevant times, solicited and accepted bribes from contractors in exchange for awarding no-bid contracts for work performed at a NYCHA development, and extorted contractors under color of official right.

## BACKGROUND REGARDING NYCHA AND NO-BID PROCESS

6. Based on my training and experience, review of records and manuals maintained by NYCHA, discussions with NYCHA employees, and discussions with other agents with the Investigating Agencies, I have learned that:

   a. NYCHA is a New York City public entity that provides housing to low- and moderate-income New York City residents.

   b. NYCHA's operations are funded, in part, by grants from the United States Department of Housing and Urban Development ("HUD"). In each year from at least 2018 through 2021, HUD provided over $1.5 billion in funding to NYCHA, making up a substantial portion of NYCHA's budget.

   c. NYCHA procurements funded at least in part through federal funds must abide by various federal regulations, including that NYCHA must conduct all procurement

2

transactions "in a manner providing full and open competition." As such, goods and services must typically be purchased via a bidding process in which NYCHA receives multiple bids after outreach to multiple prospective bidders.

    d. When the value of a contract is under a certain threshold (sometimes called a "micro purchase," and which contractors often refer to as a "purchase order" or "PO" contract), designated staff at NYCHA developments may hire a contractor of their choosing without soliciting multiple bids in order to quickly procure goods or services. This "no-bid" process is faster than the general NYCHA procurement process, and selection of the contractor requires approval of only the designated staff at the development where the work is to be performed. As is relevant to this Complaint, the threshold for a no-bid contract was $5,000 until approximately June 26, 2019, and was then raised to $10,000.

    e. For no-bid contracts, designated NYCHA staff typically communicate with a contractor to request an estimate for the proposed work. The contractor performs an initial site visit and then submits an itemized proposal to the designated staff. The NYCHA employee submits this proposal electronically to the NYCHA Procurement Department, located at 90 Church Street, New York, New York, and upon approval by the Procurement Department a purchase order is issued. After the Procurement Department issues the purchase order, the contractor then performs the work. After the work is completed, a designated NYCHA development staff member performs a site visit. If the staff member deems the contractor's work satisfactory, the NYCHA staff member approves the contractor's "statement of services" and submits it to NYCHA, which then issues payment directly to the contractor or to the contractor's bank account.

    f. NYCHA employees receive the NYCHA Human Resources Manual (the "Manual"), including periodic updated versions. Versions of the Manual from at least 2016 to the present state that "Employees of NYCHA may *not*: . . .

> • Accept a valuable gift as defined by the NYC Conflicts of Interest Board[1] from anyone that employees know or should know is seeking or receiving anything of value from the City or NYCHA.
>
> • Accept anything from anyone other than NYCHA for doing their NYCHA job, except as may be expressly authorized by NYCHA. . . .
>
> • Fail to report directly and without delay, to the Office of the Inspector General or the New York City Department of Investigation, any and all information concerning conduct that they know or should reasonably know to involve corrupt or other criminal activity or conflict of interest by any officer or employee of NYCHA or the City of New York which concerns their office or employment, or by any person dealing with NYCHA or the City of New York, which concerns their dealings with NYCHA or the City of New York. . . .

---

[1] The NYC Conflicts of Interest Board defines a "valuable gift" as "any gift to a public servant which has a value of $50.00 or more, whether in the form of money, service, loan, travel, entertainment, hospitality, thing or promise, or in any other form."

- Bribe, attempt to bribe, or solicit, give, agree to accept or accept a gratuity, benefit, money or anything of value in connection with their actions or duties as employees or in connection with the actions or duties of any other employee of NYCHA.

- Engage in any dishonest conduct, including but not limited to theft, fraud, [or] deceit, . . . falsifying or inappropriately altering any document, record, file or form of NYCHA or other entity, or knowingly submitting any falsified or inappropriately altered document, record, or form to NYCHA or other entity.

- Coerce or attempt to coerce, by intimidation, threat or harassment, any employee or resident of NYCHA or member of the public to engage in any activity that violates any law, or government regulation or any NYCHA rule or regulation."

## BARLEY'S EMPLOYMENT BY NYCHA

7. Based on my review of records provided by NYCHA, I have learned the following, in substance and in part, regarding the NYCHA employment history of SELWYN BARLEY, the defendant:

   a. From at least in or about May 2013 through at least in or about September 2021, BARLEY was employed as a superintendent at Brownsville Houses, a NYCHA development located in Brooklyn, New York.

   b. BARLEY retired from NYCHA in or about September 2021.

## BARLEY'S SOLICITATION AND RECEIPT OF PAYMENTS

8. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-13")[2] who has performed work at NYCHA's Brownsville Houses, among other developments,[3] I have learned the following, in substance and in part:

   a. Since at least in or about 2020, CW-13 performed contracting work for NYCHA with certain contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.

   b. CW-13 began performing no-bid purchase order work at Brownsville in or about January 2021. CW-13 was awarded at least approximately 15 no-bid contracts at Brownsville from in or about January 2021 through in or about May 2021, during the time in which

---

[2] The cooperating witnesses referenced in this Complaint are designated as "CW-13" and "CW-3" because this Complaint is being sought simultaneously with dozens of other Complaints charging other NYCHA employees arising out of the same investigation, and the Government has assigned unique numbers to cooperating witnesses across the entire investigation.

[3] CW-13 testified in the grand jury pursuant to an immunity order, and previously provided information to law enforcement during additional interviews pursuant to an agreement to extend the same immunity protections to the interview.

4

SELWYN BARLEY, the defendant, served as a superintendent in that NYCHA facility. During that time, CW-13 paid BARLEY approximately 10% of the contract price for approximately all of the no-bid contracts CW-13 received from BARLEY at Brownsville. The contracts were typically worth approximately $5,000 each, and CW-13 therefore paid BARLEY approximately $500 per contract.

   c. When CW-13 first attempted to be awarded no-bid contracts by BARLEY for work to be completed at Brownsville, BARLEY asked CW-13, in sum and substance, "what is in it for me?" CW-13 responded to BARLEY, in sum and substance, "don't worry about it, I will work it out," and after that conversation CW-13 began to be awarded no-bid contracts by BARLEY. After being awarded a contract, BARLEY would typically call CW-13 and ask, in sum and substance, "when are you coming to see me?" which CW-13 understood to mean CW-13 had to go pay BARLEY.

   d. CW-13 understood, based on his interactions with BARLEY and with other NYCHA employees who similarly required payments for work, that if CW-13 did not make payments to BARLEY, CW-13 would not be awarded additional no-bid contracts for work at Brownsville.[4]

   e. On or about November 20, 2023, CW-13 reviewed photobooks containing a photograph of BARLEY among photographs of dozens of other individuals. CW-13 correctly identified the photograph of BARLEY as "Selwyn Barley," the NYCHA employee to whom CW-13 had made payments in exchange for no-bid contracts from NYCHA.

   f. CW-13 has a contact saved in CW-13's cellphone with the name "Barley Super Brownsville" and a particular phone number ending in -1921 (the "BARLEY Number"). Based on commercial database records which I have reviewed, I have confirmed that the BARLEY Number is a personal phone number associated with BARLEY.

   g. CW-13 provided approximately 16 emails between CW-13 and BARLEY's NYCHA email address, which include proposals for no-bid contracts CW-13 was seeking to be awarded and statements of services for no-bid contract work completed by CW-13.

  9. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-3"),[5] who has

---

[4] In or about July 2021, state and city law enforcement agents interviewed SELWYN BARLEY, the defendant, as part of a separate investigation. During that interview, BARLEY stated, in substance and in part, that certain NYCHA contractors – including CW-13 – had offered him money but that he had not accepted their money.

[5] CW-3 testified in the grand jury pursuant to an immunity order, and previously provided information to law enforcement during additional interviews pursuant to an agreement to extend the same immunity protections to the interview. CW-3 has never worked at any of the contracting companies where CW-13 worked. Both CW-3 and CW-13 were interviewed separately and instructed by law enforcement not to discuss the substance of their interviews and grand jury testimony in connection with this investigation, and I have no reason to believe that CW-3 and CW-13 know each other.

performed work at NYCHA's Brownsville Houses, among other developments, I have learned the following, in substance and in part:

  a. From at least in or about 2018 through in or about 2021, CW-3 performed contracting work for NYCHA with certain contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.

  b. CW-3 began performing no-bid purchase order work at Brownsville in or about 2018. CW-3 was awarded at least approximately eight no-bid contracts at Brownsville from in or about August 2018 through in or about January 2021, during the time in which SELWYN BARLEY, the defendant, served as a superintendent in that NYCHA facility. During that time, CW-3 paid BARLEY approximately $500 most of the no-bid contracts that CW-3 received from BARLEY at Brownsville.[6] BARLEY would sometimes tell CW-3, in sum and substance, "Take care of me," when requesting payment.

  c. CW-3 understood, based on his interactions with BARLEY and with other NYCHA employees who similarly required payments for work, that if CW-3 did not make payments to BARLEY, CW-3 would not be awarded additional no-bid contracts for work at Brownsville.

  d. On or about October 4, 2023, CW-3 reviewed photobooks containing a photograph of BARLEY among photographs of dozens of other individuals. CW-3 identified the photograph of BARLEY as "Bali," the NYCHA employee from Brownsville to whom CW-3 had made payments in exchange for no-bid contracts from NYCHA.[7]

  e. CW-3 has a contact saved in CW-3's cellphone with the name "Bali Subher" – which appears to be a misspelling of "super" – and the BARLEY Number.

---

[6] During a proffer at which CW-3's recollection was refreshed with records of the specific types of work and contract amounts – all approximately $5,000 – from Brownsville, CW-3 estimated that CW-3 paid BARLEY approximately $500 per job. CW-3 later testified before the grand jury, without reference to any records of specific jobs, that he estimated he sometimes paid BARLEY $500 or $1,000 per contract, and may have paid $300 on certain occasions.

[7] Notes from the October 4, 2023 proffer indicate that CW-3 initially identified the development as "Bronxville," but CW-3 later discussed paying "Bali" – that is, BARLEY – at Brownsville. CW-3 is not a native English speaker and the proffer was conducted through the use of an interpreter, so "Bronxville" – which is not a NYCHA development – appears to be either a typographical error or a misunderstanding of what CW-3 initially stated.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of SELWYN BARLEY, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

_Delcine Doscher (by VF with permission)_
DELCINE DOSCHER
Special Investigator
New York City Department of Investigation
Office of the Inspector General for NYCHA

Sworn to me through the transmission of
this Complaint by reliable electronic
means this  31  day of  January , 2024.

_____
THE HONORABLE VALERIE FIGUEREDO
United States Magistrate Judge
Southern District of New York